# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARTHA LUCIA SIERRA,                :
                                     :

         Plaintiff,                    :      Civil Action No.:     16-1804 (RC)
                                       :

         v.                            :      Re Document No.:     4
                                       :

CARLA HAYDEN,[1] *in her official capacity as*   :
*Librarian of Congress*,                 :
                                       :

         Defendant.                   :

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS

## I. INTRODUCTION

Defendant Carla Hayden, in her official capacity as Librarian of Congress, moves to dismiss certain claims of discriminatory and retaliatory non-promotion by Plaintiff Martha Lucia Sierra, a Library of Congress employee, that were not timely raised to the Library of Congress's Equal Employment Opportunity Complaints Office. Ms. Sierra argues that, although she did not bring her claims within the prescribed time, the delay was justified for a variety of reasons. First, she argues that she adhered to the purpose and spirit of the regulations, because she gave the Library of Congress notice of her claims and an opportunity to investigate them. Second, she argues that, by investigating and ruling on certain claims, the Library of Congress has waived its ability to argue that Ms. Sierra did not timely raise her claims. Third, with respect to claims

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Carla Hayden as defendant.

administratively raised after filing the complaint in this case, Ms. Sierra argues that they are part of an ongoing pattern of discrimination and retaliation that continues to this day.

Ms. Sierra's arguments come up short. Adhering to the "purpose" of required regulations cannot excuse failure to exhaust in accordance with the regulations' text. And, although in certain circumstances a defendant can waive its exhaustion defense by raising it in court after disregarding it in the administrative context, Ms. Sierra fails to show that the Library of Congress ignored the timing deficiencies of her administrative complaint. In fact, the Library's decision on her complaint, which Ms. Sierra attaches as an exhibit in her opposition, shows just the opposite. Finally, Ms. Sierra's theory of ongoing discrimination has previously been rejected by the Supreme Court, and thus does not excuse her failure to administratively raise certain claims until after filing the instant lawsuit. Taken together, the Court dismisses claims related to the allegedly discriminatory and retaliatory non-promotions that occurred from 2008 to 2012 and from 2014 to 2016.

## II. REGULATORY BACKGROUND

Under Title VII of the Civil Rights Act of 1964, "[a]ll personnel actions affecting employees or applicants for employment . . . [in] the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16. However, before one can file a Title VII lawsuit in a federal district court, she must seek relief from the agency that allegedly discriminated against her. *Brown v. GSA*, 425 U.S. 820, 832 (1976). The administrative procedure that one must follow to seek relief from the Library of Congress ("LOC") is different from most federal agencies. *See* 29 C.F.R. § 1614.103(d)(3). Title VII charges the Librarian of Congress with exercising Equal Employment Opportunity Commission ("EEOC") authority with respect to the LOC. *See* 42

U.S.C. § 2000e-16(b).  The Librarian of Congress has done so in the form of LOC regulations, *see* LCR 2010-3.1 § 1, several of which Defendant reproduces as an exhibit.  *See* ECF No. 4-3.[2]

Under the LOC's regulations, "[a] staff member . . . who believes that []she has been, or is being, discriminated against . . . shall notify and consult with a Counselor not later than 20 workdays after the date of the alleged discriminatory matter."  LCR 2010-3.1 § 4(A).  This time limit may be extended through a formal request, but, with few exceptions, otherwise must be complied with before a plaintiff may file a federal lawsuit.  *See id.* § 4(B); *see also Nichols v. Billington*, 402 F. Supp. 2d 48, 69 (D.D.C. 2005), *aff'd*, 2006 WL 3018044 (D.C. Cir. Mar. 7, 2006).  Counselors work in the LOC's Equal Employment Opportunity Complaints Office ("EEOCO"), which is headed by the EEOCO Chief and largely run by the EEOCO Assistant Chief.  *See* LCR 2010-3.1 § 3.  The EEOCO Chief operates under the general guidance of the associate Librarian for Management.  *Id.* at § 3(A).  The EEOCO is charged with providing impartial counseling, and library staff are instructed to permit employees to contact counselors.  *See id.* §§ 2(A), 3(A).

### III.  FACTUAL BACKGROUND

Because Defendant moves to dismiss solely on failure-to-exhaust grounds, *see generally* Def.'s Partial Mot. Dismiss ("Def.'s Mot. Dismiss"), ECF No. 4, the Court's description of the facts of the case is largely confined to the timing of Plaintiff's administrative complaints *vis a vis* the alleged discrimination.  Martha Lucia Sierra has been an employee of the LOC for over twenty years.  Compl. ¶ 7, ECF No. 1.  She alleges that she has been discriminated and retaliated against because of her race, sex, and national origin.  Compl. ¶ 1.  Ms. Sierra specifically alleges

---

[2] Because the parties did not label their exhibits, the Court refers to them by their ECF numbers.

that her supervisors, Karen Lloyd and Dianne Houghton, discriminatorily refused to promote her

several times from 2008 through 2015, retaliatorily refused to promote her after she filed an

administrative complaint, and engaged in other discriminatory actions. *See* Compl. ¶¶ 12, 25–

28. Ms. Sierra alleges that she was publicly mocked by Ms. Lloyd, starting as early as 2009,

because English was not her first language. *See* Compl. ¶¶ 16, 19. Ms. Lloyd also allegedly

called Ms. Sierra a "traitor" in 2010, because Ms. Sierra helped the American Embassy in

Mexico with its library program. Compl. ¶ 25(c). Although it is not clear when the specific

instances of non-promotion occurred during the course of the alleged timeframe of

discrimination, according to the complaint, "[i]n 2008 and continuing through 2015, Ms. Lloyd

refused to approve a detail assignment for Ms. Sierra . . . [which] has adversely [affected] her

professional development." Compl. ¶ 25(a). The Complaint does not set out, in detail, the

timing of discrete instances of discrimination and retaliation that allegedly occurred before she

filed her first administrative complaint. *See generally* Compl.

According to the complaint, Ms. Sierra filed her first formal "Allegation of

Discrimination" with the LOC on December 27, 2013, and then a formal complaint in the LOC's

EEOC Office on April 9, 2014. Compl. ¶ 26. The parties attached these complaints to their

filings. *See* ECF No. 4-4, 6-2 ("December 2013 LOC Compl.");[3] ECF No. 6-3 ("April 2014

EEOC Compl."). Ms. Sierra's December 27, 2013 LOC complaint alleges that she was harassed,

mocked, and treated differently from other employees a month earlier on November 27, but also

suggests that the problems had been ongoing. *See* December 2013 LOC Compl. at 1, 2.[4] Her

April 2014 EEOC complaint also references November 27, 2013, but states that Ms. Lloyd

---

[3] Plaintiff and Defendant each append copies of the December 2013 Library of Congress complaint.

[4] The Court cites to the ECF page numbers.

"continually exhibited hostility toward [her]" since as early as 2008. *See* April 2014 EEOC

Compl. at 1, 3. The LOC accepted Ms. Sierra's complaints and investigated them. Compl. ¶ 26.

Since filing her first administrative complaint, Ms. Sierra has asked for a promotion each

year but has not received one, allegedly in retaliation for filing administrative complaints. *See*

Compl. ¶¶ 28–29. Three days after she filed this case in federal court on September 9, 2016, *see*

Compl. at 14, she filed another LOC "Allegation of Discrimination." *See* ECF No. 6-7

("September 2016 LOC Compl."). The 2016 complaint mentions only the allegedly retaliatory

failures-to-promote that occurred in 2015 and on August 4, 2016—not the one in 2014. *See*

September 2016 LOC Compl. at 2.

## IV. LEGAL STANDARD

The rules for Rule 12(b)(6) motions apply to motions to dismiss for failure to exhaust

administrative remedies under Title VII. *See Laughlin v. Holder*, 923 F. Supp. 2d 204, 208

(D.D.C. 2013). To survive such a motion a complaint must contain sufficient factual allegations

that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* Instead, plaintiffs must "nudge[] their claims across

the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).

"In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider the facts alleged

in the complaint, documents attached as exhibits or incorporated by reference in the complaint,

or documents upon which the plaintiff's complaint necessarily relies even if the document is

produced not by the parties." *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C.

2013) (internal citations and quotation marks omitted). "[A] document need not be mentioned

by name to be considered 'referred to' or 'incorporated by reference' into the complaint."
*Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215, 218 (D.D.C. 2012) (internal citation omitted).
Of course, courts may also take "judicial notice of facts on the public record . . . to avoid
unnecessary proceedings when an undisputed fact on the public record makes it clear that the
plaintiff does not state a claim upon which relief could be granted." *See Covad Commc'ns Co. v.
Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (quoting *Marshall Cty. Health Care Auth.
v. Shalala*, 988 F.2d 1221, 1228 (D.C. Cir. 1993) (Mikva, C.J., dissenting)).

Failure to exhaust administrative remedies is an affirmative defense. *See Mondy v. Sec'y
of the Army*, 845 F.2d 1051, 1058 n.3 (D.C. Cir. 1988) (MacKinnon, J., concurring) (citing
*Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)); *see also Bowden v. United States*, 106 F.3d
433, 437 (D.C. Cir. 1997) ("Because untimely exhaustion of administrative remedies is an
affirmative defense, the defendant bears the burden of pleading and proving it." (citing
*Brown*, 777 F.2d at 13)). Defendants can meet their burden of pleading and proving a failure to
exhaust at the motion-to-dismiss stage by using the pleadings and undisputed documents in the
record. *See Bowden*, 106 F.3d at 437.

## V. ANALYSIS

Defendant moves to dismiss only Ms. Sierra's claims of allegedly discriminatory and
retaliatory non-promotions that occurred from 2008 to 2012, and from 2014 to 2016, on the
grounds that Ms. Sierra failed to exhaust her administrative remedies. *See* Def.'s Mot. Dismiss
at 6. With respect to the former category of non-promotions, Ms. Sierra contends that she
adhered to the purpose of the LOC's administrative procedure, and that even if she did not,
Defendant has waived her failure-to-exhaust defense, because the LOC accepted, investigated,
and decided her complaint. *See* Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 7–11, ECF

No. 6.  With respect to the non-promotions from 2014 to 2016, Ms. Sierra contends that those specific instances of retaliation or discrimination were part of an ongoing pattern of discrimination that the LOC was on notice of from her previous complaint.  *See* Pl.'s Opp'n at 6–7.  Plaintiff also argues that any reliance on the administrative record requires the Court to convert Defendant's motion to dismiss into one for summary judgment.  *See* Pl.'s Opp'n at 13.

Plaintiff's arguments come up short.  Adherence to the spirit of regulations is insufficient when it comes to timely exhaustion of administrative remedies.  And, although agencies can waive the exhaustion defense when they decide a case on the merits *without mentioning timeliness*, that was not the case here.  With respect to the alleged non-promotions between 2014 and 2016, Plaintiff relies on a case that is no longer good law in this circuit.  Although it is true that the D.C. Circuit used to allow plaintiffs to raise claims related to those that were timely exhausted, the Supreme Court rejected such an approach in *National Railroad Passenger Corp. v. Morgan*.  Finally, the Court need not convert Defendant's motion into one for summary judgment, because it may take judicial notice of the only administrative documents needed to rule on this motion.  Thus, the Court grants Defendant's partial motion to dismiss, dismissing Plaintiff's complaint insofar as it seeks recovery for discrete non-promotions occurring from 2008 to 2012 and from 2014 to 2016.[5]

### A.  Conversion into a Motion for Summary Judgment

Plaintiff argues that the Court cannot look to the administrative record to resolve Defendant's motion, because to do so would require converting this motion into one for

---

[5] The Court has not been asked to determine whether these non-promotions may be raised within the context of Plaintiff's hostile-work-environment claim.  *See Baird v. Gotbaum*, 662 F.3d 1246, 1252–53 (D.C. Cir. 2011).

summary judgment.  *See* Pl.'s Opp'n at 13.[6]  Because the Court need only look to documents to which it can take judicial notice or that Plaintiff references in her complaint, conversion to a motion for summary judgment is unnecessary.

In general, if the Court relies on materials other than those permitted to be considered on a motion to dismiss—namely, the facts alleged in the complaint, documents attached as exhibits or incorporated by reference, documents upon which the plaintiff's complaint necessarily relies, and facts of which the Court may take judicial notice—"it converts the motion to one for summary judgment."  *See Void v. Smoot*, No. 16-0078, 2016 WL 6459554, at *5 (D.D.C. Oct. 31, 2016), *appeal docketed*, No. 16-5367 (D.C. Cir. Dec. 8, 2016).  In the context of exhaustion, courts are willing to rely upon administrative orders and administrative complaints without converting the motion into one for summary judgment when the documents are "referred to in the complaint, . . . are integral to [the plaintiff's] exhaustion of administrative remedies, and are public records subject to judicial notice."  *See Laughlin*, 923 F. Supp. 2d at 209.  "[C]ourt[s] may take judicial notice of matters of a general public nature . . . without converting the motion to dismiss into one for summary judgment."  *Koutny v. Martin*, 530 F. Supp. 2d 84, 89 (D.D.C. 2007) (quoting *Baker v. Henderson*, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001)).  "Thus, courts have taken judicial notice of . . . parties' administrative complaints when no party disputes their

---

[6] In fact, Plaintiff, purporting to directly quote the court in *Hansen v. Billington*, 644 F. Supp. 2d 97, 103 (D.D.C. 2009), asserts that "'[r]eview of portions of the administrative record that were not included in the Complaint requires that the Defendant's Motion to Dismiss be converted into a motion for summary judgment.'"  Pl.'s Opp'n at 13.  No such quotation in *Hansen* exists.  In fact, the *Hansen* court explicitly acknowledges that a court may consider facts in "documents . . . incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Hansen*, 644 F. Supp. 2d at 102.  That court then went on to state that the Court may, under certain circumstances, convert a motion to dismiss into one for summary judgment.  *See id.* at 103.  Never did the Court state that any review of the administrative record always requires such conversion.  *See generally id.*  The Court assumes that Plaintiff's misstatement resulted from a misunderstanding.

authenticity." *Vasser v. McDonald*, No. 14-cv-0185, 2016 WL 7480263, at *5 (D.D.C. Dec. 29, 2016) (citing *Ahuja v. Detica Inc.*, 742 F. Supp. 2d 96, 103 (D.D.C. 2010); *Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 83 (D.D.C. 2015)). Even a court adopting a strict interpretation of the outside materials that may be considered at the motion-to-dismiss stage concluded that the court could consider the plaintiff's EEOC complaint. *See id.*; *Latson v. Holder*, 82 F. Supp. 3d 377, 386 (D.D.C. 2015) ("[T]he Court, in addition to the pleadings, may only consider the plaintiff's EEOC Complaint and Notice of Charge without converting the motions to dismiss." (internal citation, quotation marks, and alterations omitted)).

As explained below, the Court need only consider Plaintiff's administrative complaints to resolve Defendant's partial motion to dismiss. Those complaints are subject to judicial notice and, in the case of Ms. Sierra's 2013 and 2014 complaints, referred to in the complaint. *See* Compl. ¶ 26. Thus, the Court need not convert this motion into one for summary judgment.

Notably, even if the Court were to treat this motion as one for summary judgment, the Court would likely still be able to resolve it. In responding to a motion for summary judgment, a party may not simply rest on the assertions in its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). But it can, under Federal Rule of Civil Procedure 56(d) ("When Facts Are Unavailable to the Nonmovant"), "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." It is appropriate for the Court to rule on the merits of a converted motion for summary judgment when "(1) the evidence submitted is sufficiently comprehensive to conclude that further discovery would be unnecessary; and (2) the non-moving party has not been unfairly disadvantaged by being unable to access the sources of proof necessary to create a genuine issue of material fact." *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 24 (D.D.C. 2013); *see also Rosier v. Holder*, 833 F. Supp. 2d 1, 5 (D.D.C. 2011) (treating a

motion as one for summary judgment because "both parties refer[red] to documents outside of the complaint and there [was] nothing in the record . . . indicat[ing that] the parties did not have a reasonable opportunity to present all pertinent material").

Ms. Sierra has not complied with Rule 56(d) in two ways. First, she did not submit an affidavit or declaration germane to the issue of unavailable facts. *See generally* Pl.'s Opp'n. Second, even in her brief in support of her opposition she has not articulated what further discovery would be necessary to oppose Defendant's motion. Instead, she merely states that she "believes that additional discovery is required to allow the parties to offer evidence in support of their factual allegations and respectfully requests . . . additional time to . . . take discovery." Pl.'s Opp'n at 13. She suggests that the Court may need to consider "additional evidence from [Ms.] Sierra and perhaps [Mr.] Page," the LOC CFO. Pl.'s Opp'n at 13. But she offers no "specified reasons" that discovery would shed light on the seemingly straightforward timing issues necessary to resolving this motion to dismiss for failure to exhaust. *See* Pl.'s Opp'n. Any evidence from Ms. Sierra could have been provided at this stage, or at the very least described in greater detail in an affidavit, and Mr. Page, CFO of the LOC, has no apparent connection to the timing of Ms. Sierra's administrative complaints (beyond the tolling issue rejected below). Thus, Plaintiff has not shown that she is entitled to discovery before resolution of the instant motion.

## B. Non-Promotions Before 2012

Defendant moves to dismiss Ms. Sierra's claims for discriminatory and retaliatory non-promotions that occurred from 2008 through 2012, on the grounds that Ms. Sierra failed to timely administratively file her complaints with the LOC. *See* Def.'s Mot. Dismiss at 6. Plaintiff responds that (1) the purpose of the exhaustion doctrine has been satisfied, (2) the LOC waived its non-exhaustion defense by accepting Plaintiff's administrative complaints, and (3) the

twenty-workday time limit was tolled until Ms. Sierra knew the facts supporting her claim.  The
Court addresses these three issues in turn.

### 1.  Plaintiff Did Not Satisfy the LOC's Administrative Timing Requirements

Ms. Sierra appears to concede that she did not adhere to the black letter of the library
regulations.  *See* Pl.'s Opp'n at 10–11.  As noted above, LOC regulations require an employee
who believes she has been discriminated against to consult with a counselor within twenty
workdays of "the date of the alleged discriminatory matter."  LCR 2010-3.1 § 4(A).  Unlike with
other Title VII cases, where the regulations provide for more time when a plaintiff "did not know
and reasonably should not have known that the discriminatory matter or personnel action
occurred," *see* 29 C.F.R. § 1614.105(a)(2), the LOC regulations only explicitly allow for
extensions upon prior request by the complainant.  *See* LCR 2010-3.1 § 4(B).

Ms. Sierra thus contends only that she has adhered to the purpose of the library
regulations—namely, to give the agency sufficient notice of the alleged grievance—by filing the
administrative complaints when she did. *See* Pl.'s Opp'n at 7–11.  Because completely missing a
deadline is not a mere "technical flaw" that can be excused so long as it provides sufficient
notice, the Court rejects Plaintiff's argument.

Ms. Sierra is correct that, in many respects, "the basic demand on the complainant is that
the agency be given sufficient, even if technically flawed, notice of the grievance."  *Bethel v.
Jefferson*, 589 F.2d 631, 644 (D.C. Cir. 1978).  This standard stems from the idea that the
administrative complaint procedure was meant to be maneuvered by laypersons, not lawyers.
*See id.* at 643.  However, completely missing an administrative deadline is not a mere technical
flaw; timely administrative filing is, with rare exception, a prerequisite to filing suit.  *See
Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 180 (D.D.C. 2016) (characterizing a

Title VII administrative filing deadline as a "cutoff"), *reconsideration denied*, 185 F. Supp. 3d 135 (D.D.C. 2016); *see also Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007); *Horsey v. U.S. Dep't of State*, 170 F. Supp. 3d 256, 267 (D.D.C. 2016); *Laughlin*, 923 F. Supp. 2d at 211. Indeed, a late-filed administrative complaint does not provide the agency with any timely notice, let alone "sufficient" notice. Thus, the twenty-workday requirement is not a mere technicality that can be circumvented by adherence to the "purpose" of the library regulations. *See Nichols v. Billington*, 402 F. Supp. 2d 48, 69–70 (D.D.C. 2005) ("Problematically for Plaintiff, she did not file an allegation of discrimination as to any of these selections within 20 workdays of the discriminatory event as *required* by LCR 2010-3.1." (emphasis added)), *aff'd*, No. 05-5326, 2006 WL 3018044 (D.C. Cir. Mar. 7, 2006).

But even if the "did not know and reasonably should not have known" discovery rule were to apply in the context of the LOC regulations, Plaintiff's claims would still be untimely for two reasons. First, as explained below, *infra* Part V.B.3, the "knew or should have known" standard would apply only to knowledge of the *non-promotions*, not the allegedly improper motivation for the non-promotions. Ms. Sierra's complaint seems to suggest that she was aware that other employees were being approved for advancement while she was not and that, at each of her annual reviews, she was told that she would not be promoted that year. *See* Compl. ¶¶ 18, 25(a). Second, even if the "knew or should have known" standard applied to Ms. Sierra's understanding of Ms. Lloyd's motivation, she accuses Ms. Lloyd of overtly discriminatory statements and criticism as early as 2009. *See* Compl. ¶¶ 19, 25(c).

In short, because Ms. Sierra did not adhere to the timing requirements of the LOC regulations, with respect to the alleged non-promotions occurring before 2012, she did not exhaust her administrative remedies in a timely fashion. And even if the timeline were to have

only begun after she "knew or should have known" of the discriminatory actions, she still would not have timely exhausted.

## 2. The LOC Did Not Waive Its Non-Exhaustion Defense

Plaintiff next contends that the LOC waived its non-exhaustion defense by accepting and investigating her administrative complaint. Notwithstanding a complainant's untimely submission of an administrative complaint, agencies can, under certain circumstances, waive the defense of exhaustion by accepting a plaintiff's complaint out of time. *See Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997). Once a defendant shows non-exhaustion—as is the case here—the plaintiff carries the burden of showing waiver. *Estate of Rudder v. Vilsack*, 10 F. Supp. 3d 190, 195 (D.D.C. 2014).

"[A]gencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint . . . ." *Bowden*, 106 F.3d at 438. Successfully invoking the equitable doctrine of waiver requires a plaintiff to show not only that an agency accepted and investigated a discrimination complaint, but also that it decided it on the merits "without mentioning timeliness." *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 86 (D.D.C. 2009) (quoting *Bowden*, 106 F.3d at 438). The out-of-jurisdiction case that Plaintiff cites in support of her claim, *see* Pl.'s Opp'n at 11, goes even further, holding that an agency waives the defense of non-exhaustion only by "making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness."[7] *See Seals v. Potter*, 787 F. Supp. 2d 239, 243 (N.D.N.Y. 2011) (quoting *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002)). In *Seals*, the plaintiff argued that the agency had waived its non-exhaustion argument because it

---

[7] Of course, the Court cites *Seals* only to address Plaintiff's argument, because it is the case she explicitly relies upon. The Court need not and does not adopt the rule in *Seals* to decide this case.

"accept[ed] and pursu[ed]" her administrative complaint. *Id.* Reasoning that "government agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint," that court rejected that argument because the agency did not make an express finding of timeliness. *Id.* (quoting *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (per curiam)).

Ms. Sierra in no way shows that the LOC decided her discrimination complaint on the merits without mentioning timeliness, as required under *Nurriddin*, 674 F. Supp. 2d at 86. In fact, she does the opposite. Ms. Sierra attaches the LOC's administrative decision to her opposition, which contains the following paragraph:

> The record revealed that you first contacted an EEO Counselor on or about December 27, 2013, and that the last time you asked Ms. Lloyd for a promotion . . . was 2012. Accordingly, your claim of non-promotion failed to comply with the time limits of Library of Congress Regulation 2010-3.1, Policy and Procedures for Filing Equal Employment Opportunity Complaints of Discrimination.

ECF No. 6-5 ("LOC Administrative Decision") at 10. Thus, rather than ignoring the timeliness issue or expressly finding that Plaintiff's claims were timely, the LOC found that they were untimely. Accordingly, Plaintiff has failed to show that the LOC waived its defense of untimely exhaustion.

### 3. Plaintiff Has Not Demonstrated that She Is Entitled to Equitable Tolling

Ms. Sierra next argues that the twenty-workday deadline was tolled until she knew that she was discriminated against and could assert her claims without fear of reprisal, which occurred in December 2013 when "the confluence of facts and the needed support from [the LOC's CFO] enabled [Ms.] Sierra to . . . safely assert her claims for the first time." Pl.'s Opp'n at 12. In support of her assertion that she could not assert her claims without fear of reprisal, Ms. Sierra contends that Ms. Lloyd "isolated [her] by forbidding her from speaking to . . . the Library CFO." Pl.'s Opp'n at 12. In support of her assertion that she did not have all the facts, she

contends that when she finally spoke to the CFO, the CFO informed her that another employee was asserting discrimination. Pl.'s Opp'n at 12. Because Ms. Sierra's argument is incongruent with the relevant legal standard for tolling, the Court rejects her argument.

As with waiver, the plaintiff bears the burden of showing that she is entitled to equitable tolling. *Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007) (citing *Harris v. Att'y Gen. of the U.S.*, 400 F. Supp. 2d 24, 26 (D.D.C. 2005)). The Court's equitable power to toll the twenty-workday time limit imposed by the LOC—which, as noted above, begins to run at the time of the alleged discriminatory event, *see* LCR 2010-3.1 § 4(A)—"will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable [tolling] only sparingly.").

In the context of non-promotion, courts are open to tolling administrative deadlines until the time when the complainant had reason to know that she was not selected for a promotion. *See, e.g.*, *Hairston v. Tapella*, 664 F. Supp. 2d 106, 114 (D.D.C. 2009). However, such equitable tolling only applies when "despite all due diligence, a plaintiff is unable to discover *essential* information bearing on the existence of his claim," which does not include details about the decision-making process. *Pacheco v. Rice*, 966 F.2d 904, 906–07 (5th Cir. 1992) (emphasis added) (also noting that "[t]he doctrine of equitable tolling has it limits," including "[t]he requirement of diligent inquiry [that] imposes an affirmative duty on the potential plaintiff"); *accord Vasser*, 2016 WL 7480263, at *8.

In the context of allegations that the defendant blocked access to the administrative process, "to successfully assert equitable estoppel, [the plaintiff] must demonstrate that [s]he was diligent and must point to 'active steps' the defendant took to prevent the plaintiff from making a

timely filing." *Cristwell v. Veneman*, 224 F. Supp. 2d 54, 60 (D.D.C. 2002) ("For a plaintiff to successfully assert equitable estoppel, when it is alleged that an untimely filing was a result of conduct by the defendant, the plaintiff must be able to point to some type of 'affirmative misconduct' or misleading information regarding the filing deadline by the defendant." (citing *Irwin*, 498 U.S. at 96)). Conclusory allegations lacking particularity that agency officials acted in bad faith are insufficient to show "active steps" preventing timely filing. *Id.*

Ms. Sierra has not carried the heavy burden of showing that the twenty-workday limitation should be tolled. Her argument that she did not have sufficient information because she was not told of *other* instances of discrimination is insufficient because the existence of such other cases is not "essential" to her own claim under *Pacheco* and *Vasser*. *See* 966 F.2d at 906–07; 2016 WL 7480263 at *8. There is no indication that she was unaware that she was passed up for promotion, let alone that she could not have been aware of the fact despite "all due diligence." *See Pacheco*, 966 F.2d at 906–07. In fact, she pleads the opposite. Ms. Sierra alleges that Ms. Lloyd consistently "mov[ed] the goalposts" each time she met the previously defined requirements for promotion during her annual reviews. Compl. ¶ 18. She further alleges that Ms. Lloyd told her that she was not going to be promoted during performance reviews. Compl. ¶¶ 19–20. And even further assuming that lacking knowledge of animus justifies tolling, Ms. Sierra alleges that Ms. Lloyd publicly mocked her because English was not her first language as early as 2009 and called her a "traitor" for helping with a 2010 library program in a Spanish-speaking country. *See* Compl. ¶¶ 19, 25(c). Thus, even assuming that the twenty-workday clock could be tolled by a plaintiff showing that she had no knowledge of the animus against her, Ms. Sierra has, if anything, alleged the opposite.

Nor has Ms. Sierra shown that she was actively prevented from pursuing her claim by anyone in the LOC. The fear of reprisal that she alleges is stated in mere conclusory terms, backed only by her contention that she was prevented from directly contacting the CFO of the library. *See* Pl.'s Opp'n at 12. Although contact with the CFO may have provided Ms. Sierra with information about a separate allegation of discrimination leading her to pursue her own complaint, she does not explain how hindrances to contacting the CFO affected her ability to contact a counselor with the LOC's EEOCO. As noted above, the LOC EEOCO is headed by the EEOCO Chief, who operates under the "general guidance" of the associate Librarian for Management. *See* LCR 2010-3.1 § 3(A). The LOC CFO, in comparison, deals with LOC budget planning and implementation. *See Upshaw v. Tenenbaum*, No. 12-cv-3130 2013 WL 3967942, at *1 (D. Md. July 31, 2013).

Ms. Sierra has not carried her burden of showing that extraordinary circumstances justifying tolling are present. She has not demonstrated that she lacked information that was essential to her claim, let alone information that she could not have accessed with due diligence. She also fails to explain how her supervisors actively prevented her from filing an LOC EEOC complaint. Accordingly, she is not entitled to equitable tolling of her untimely non-promotion claims for the years 2008 through 2012.[8]

### C.  Non-Promotions from 2014 to 2016

Defendant also moves to dismiss Ms. Sierra's failure-to-promote claims that occurred from 2014 to 2016, on the grounds that she did not file her administrative complaint until after she filed this case. *See* Def.'s Mot. Dismiss at 8. Plaintiff argues that "[t]he discriminatory act of non-promotion began in 2008 and continues to this day," and notes that she filed a second

---

[8] The Court addresses the issue of non-promotion in 2013 below in Section D.

administrative complaint after she filed the instant complaint. *See* Pl.'s Opp'n at 14. In essence, she invokes the "continuing violation" theory, which holds that an administrative complaint of ongoing discrimination incorporates subsequent, "essentially similar" conduct. *See* Pl.'s Opp'n at 14; *Loe v. Heckler*, 768 F.2d 409, 420 (D.C. Cir. 1985). Because that theory is inapplicable to Ms. Sierra's claims, the Court will dismiss her claims of non-promotion between 2014 and 2016 for prematurely filing this suit before exhausting her administrative remedies. But even if Ms. Sierra had not prematurely filed this lawsuit, the Court would still dismiss her claims for failure to timely exhaust administrative remedies.

The Supreme Court squarely addressed this issue in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). There, the plaintiff alleged that he was "consistently harassed and disciplined more harshly than other employees [because] of his race." *Id.* at 105–06. The government moved for summary judgment on all claims that took place prior to the administrative filing period.[9] *Id.* at 106. The Supreme Court held that the plaintiff was required to exhaust all his claims, reasoning that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges,"[10] and "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113–14. Interpreting *Morgan*, other courts in this district have explicitly "rejected the 'continuing

---

[9] Although the case involved the EEOC as opposed to the LOC, the relevant language is indistinguishable. *Compare* LCR 2010-3.1 § 4(A) ("A staff member . . . who believes that []she has been, or is being, discriminated against . . . shall notify and consult with a Counselor not later than 20 workdays *after the date of the alleged discriminatory matter.*" (emphasis added)), *with Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("A charge under this section *shall be filed* within one hundred and eighty days *after the alleged unlawful employment practice occurred.*" (quoting 42 U.S.C. § 2000e-5(e)(1))).

[10] Non-promotions are discrete discriminatory acts. *Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."); *see also Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003); *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 53 (D.D.C. 2015).

violation' theory that would permit plaintiffs to recover for discrete acts of discrimination and retaliation that were not exhausted but were 'sufficiently related' to exhausted claims." *Payne v. Salazar*, 628 F. Supp. 2d 42, 51 (D.D.C. 2009), *aff'd in relevant part, rev'd in part*, 619 F.3d 56 (D.C. Cir. 2010) (internal quotation marks omitted) (citing *Wada v. Tomlinson*, 517 F. Supp. at 183); *see also Prescott-Harris v. Fanning*, No. 15-cv-1716, 2016 WL 7223276, at *3 (D.D.C. Dec. 12, 2016); *Keeley v. Small*, 391 F. Supp. 2d 30, 40 (D.D.C. 2005).

As noted above, Ms. Sierra has not exhausted her claims of alleged non-promotion occurring from 2014 to 2016. *See* September 2016 LOC Compl. at 2. Indeed, she did not raise her 2014 or 2015 claim until September 2016 at the earliest. *See* September 2016 LOC Compl.; *see also* Pl.'s Opp'n at 14. Her argument that the non-promotions were part of a continuing violation has previously been rejected by the Supreme Court in *Morgan*. Ms. Sierra cites to *Loe*, 768 F.2d at 420, but, under *Morgan*, *Loe* is no longer good law in this circuit. *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 34 (D.D.C. 2003). Assuming that her supervisors subjected her to ongoing discrimination, Ms. Sierra had an obligation to file administrative complaints within the time required under library regulations for each alleged non-promotion, because each instance of non-promotion constituted a "discrete discriminatory action." *See Morgan*, 536 U.S. at 114.

In addition, Ms. Sierra's 2014, 2015, and 2016 administrative complaints were not timely exhausted. Her third LOC complaint, *see* Pl.'s Opp'n at 14, was filed on September 12, 2016, *see* September 2016 LOC Compl. In that complaint, she alleges that her supervisor "refused to promote [her] to a GS-14" on August 4, 2016, well more than twenty workdays before she filed her complaint, and at least several months before the next-latest non-promotion in 2015. September 2016 LOC Compl. Thus, Ms. Sierra did not timely exhaust her administrative remedies for alleged non-promotions occurring from 2014 to 2016. Because Ms. Sierra filed this

lawsuit before her latest administrative complaint and did so over twenty workdays after the latest alleged non-promotion, the Court dismisses Ms. Sierra's complaint with respect to alleged non-promotions occurring from 2014 to 2016.

### D. 2013 Non-Promotion

Ms. Sierra argues that regardless of how the Court rules on the other non-promotions, she has stated a claim for discriminatory non-promotion in 2013. *See* Pl.'s Opp'n at 15. According to the complaint, Ms. Lloyd had the opportunity to promote Ms. Sierra in 2013, but refused to do so.[11] Compl. ¶ 24. Ms. Sierra concedes that she did not request a promotion in 2013. *See* Compl. ¶ 28; LOC Administrative Decision at 10; *see also* Pl.'s Opp'n at 15. Defendant did not move to dismiss any claim related to a 2013 non-promotion, *see generally* Def.'s Mot. Dismiss, nor did it brief the issue of whether an employee must request a promotion to state a claim for non-promotion, *see generally id.*; Def.'s Reply, ECF No. 8.[12] Nonetheless, the Court briefly analyzes the issue and concludes that Ms. Sierra's 2013 non-promotion claim is likely dismissible because she did not seek out a promotion.

When, as here, a plaintiff alleges that she was denied a promotion in grade and salary—as compared to a promotion into a vacant position—to establish a prima facie case, the plaintiff

_____

[11] In its reply, Defendant argues that asserting a 2013 non-promotion is a "new claim" not fairly encompassed in the complaint. Def.'s Reply at 3 n.1. Although Plaintiff's complaint is not a paragon of clarity, she does specifically allege that Ms. Lloyd had the opportunity to promote her in 2013, but discriminatorily refused to do so. *See* Compl. ¶ 24. She elaborated on other instances of non-promotion in greater detail later in her complaint, but this does not mean she did not allege a claim with respect to the 2013 non-promotion.

[12] To be sure, in its reply, Defendant does argue that Ms. Sierra never administratively raised a non-promotion claim in 2013. Def.'s Reply at 3 n.1. But because this argument was not made in Defendant's motion to dismiss, *see generally* Def.'s Mot. Dismiss, the Court will not dismiss the claim. *See Walker v. Pharm. Research & Mfrs. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006) ("Because the plaintiff only addresses this particular claim in her reply to the motion . . . , the plaintiff has waived the argument.").

"must show that (1) [s]he sought and was denied a promotion (2) for which [s]he was qualified, and (3) that other employees of similar qualifications . . . were indeed promoted at the time the plaintiff's request for promotion was denied." *Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 120 (D.D.C. 2014) (internal alterations and quotation marks omitted) (quoting *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003)), *aff'd*, 818 F.3d 751 (D.C. Cir. 2016); *see also Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981); *Cones v. Shalala*, 199 F.3d 512, 517 (D.C. Cir. 2000) (noting that the *Bundy* test is "designed expressly for denials of pay or grade increases"). This first element requires the plaintiff to affirmatively show that she sought and was denied a promotion. *See Taylor*, 350 F.3d at 1294–95.

Ms. Sierra did not request a promotion in 2013. Under the circumstances of this case, seeking out an increase in grade or salary is a prerequisite to suing for non-promotion. *See Bundy*, 641 F.2d at 951. But because Defendant did not move to dismiss the 2013 non-promotion, the Court will do no more than note that Ms. Sierra's claim for non-promotion in 2013 is likely dismissible. *See Fields v. Bellamy*, 1994 WL 549470, at *1 (D.C. Cir. 1994) ("[S]ua sponte Rule 12(b)(6) dismissal is appropriate only when it is 'patently obvious that the plaintiff could not have prevailed on the facts alleged in [her] complaint.'") (alterations omitted) (quoting *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (per curiam)).

## VI. CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 1, 2017                                                    RUDOLPH CONTRERAS
                                                                                    United States District Judge